UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IBN SHARIF,<br><br>    **Plaintiff,**<br><br>v.<br><br>CITY OF HACKENSACK, CITY OF HACKENSACK POLICE DEPARTMENT, CAPT. FRANCESCA AQUILA, DET. ROCCO DUARDO, DET. JOSEPH GONZALES, DET. LT. SCOTT SYBEL, ABC CORP. 1-3 (Name hereby fictitious), JOHN DOES 1-10 (Name being hereby fictitious),<br><br>    **Defendants.** | Civ. No. 17-12410 (KM) (MAH)<br><br>**MEMORANDUM OPINION** |

## KEVIN MCNULTY, U.S.D.J.:

Plaintiff Ibn Sharif brings this action against the City of Hackensack, the City of Hackensack Police Department, Captain Francesca Aquila, Detective Rocco Duardo, Detective Joseph Gonzales, and Detective Lieutenant Scott Sybel (collectively, "Defendants"), based on Sharif's allegedly unlawful arrest. According to the Complaint,[1] Sharif was arrested and charged with selling

---

[1] For ease of reference, certain items from the record will be abbreviated as follows:

| | |
|---|---|
| "DE __" = | Docket Entry in this case |
| "Compl." = | Complaint (DE 1) |
| "Def. Mot." = | Defendants' Memo of Law in Support of their Motion to Dismiss the Complaint (DE 4) |
| "Pl. Opp." = | Plaintiff's Letter in Opposition to Defendants' Motion to Dismiss the Complaint (DE 6) |
| "Def. Reply" = | Defendants' Reply Memo of Law in Further Support of its Motion to Dismiss the Complaint (DE 7) |

1

cocaine to undercover police officers. Those officers were subsequently reprimanded following a separate incident in which they allegedly entered a house without a warrant. Sharif attempts to draw a connection between that incident and his own arrest, implying a common denominator of relaxed constitutional standards. He asserts claims for false arrest, malicious prosecution, *Monell* violations, and violations of the New Jersey State Constitution, seeking damages. Defendants moved to dismiss the Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons explained in this opinion, I will dismiss the Complaint for failure to meet the minimal pleading standards of Rule 8.

## I. SUMMARY OF ALLEGATIONS

Sharif's Complaint alleges the following facts. For purposes of this motion to dismiss only, I must assume their truth, although of course they have not yet been tested by any fact finder. *See* pp. 4-5, *infra*.

Plaintiff Ibn Sharif is a resident of New Jersey. (Compl. ¶ 7). The City of Hackensack ("the City") is a New Jersey municipality; one of its departments is the Hackensack Police Department ("Hackensack PD").² (*Id.* ¶ 9). During the relevant conduct in issue, Hackensack PD employed the four individual defendants, Captain Francesca Aquila ("Aquila"), Detective Rocco Duardo

---

² The City of Hackensack, not its police department, is the proper defendant, and the remainder of this Opinion will proceed on that basis.

A New Jersey municipal police department is not a separate entity from the municipality. N.J. Stat. Ann. § 40A:14–118 (municipal police department is "an executive and enforcement function of municipal government"); *Adams v. City of Camden*, 461 F.Supp.2d 263, 266 (D.N.J.2006) (collecting cases); *Padilla v. Twp. of Cherry Hill*, 110 F. App'x. 272, 278 (3d Cir.2004). Therefore, Sharif's claims against the Hackensack PD are more appropriately asserted against the City, and all claims against Hackensack PD are dismissed with prejudice. *See Santiago v. Warminster Twp.*, 629 F.3d 121, 126 (3d Cir. 2010) (acknowledging appropriateness of dismissing civil rights counts against a municipal police department "because it was not a separate legal entity from" the municipality.). Sharif has not responded to this point in his Opposition Brief. (Def. Reply at 6). The Police Department is dismissed from this action.

2

("Duardo"), Detective Joseph Gonzales ("Gonzales"), and Detective Lieutenant Scott Sybel ("Sybel"). (*Id.* ¶¶ 9, 10).

On March 15, 2016, at approximately 6:00 p.m., Sharif was arrested by Duardo and Sybel pursuant to three outstanding warrants. (*Id.* ¶ 18). The charges and the arrest warrant were based on Sharif's alleged participation in sales transactions for cocaine with Gonzalez and Duardo (in an undercover capacity) on March 15, April 12, and May 11, 2016. (*Id.* ¶¶ 20-22). Sharif was charged with selling cocaine to an undercover officer in violation of N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(3), as well as knowingly possessing a controlled dangerous substance in violation of N.J.S.A. 2C:35-10(a)(1). (*Id.* ¶ 23).

After Sharif's arrest, the Bergen County Prosecutor's Office dismissed the charges against him based on "serious concerns about the credibility" of Gonzalez, Duardo, and Sybel. (*Id.* ¶ 24). Those concerns emanated from a separate incident in which those detectives were accused of "engaging in misconduct as police officers" when they allegedly "broke into an apartment without a warrant." (*Id.* ¶ 25). As a result of the suspected misconduct, Gonzalez and Duardo were placed on administrative leave. (*Id.* ¶ 26). Sybel retired from the police force. (*Id.* ¶ 26).

Sharif claims that the allegations which caused him to be arrested were false and that he was wrongfully arrested. (*Id.* ¶¶ 19, 27). Defendants allegedly arrested Sharif "without probable cause or [a] reasonable belief that [he] was committing a crime." (*Id.* ¶ 26). These actions supposedly stemmed from a broader municipal practice of "failing to investigate crimes adequately" and "fabricating evidence in investigations." (*Id.* ¶ 33). That pattern or practice led the individual officers "to believe that misconduct would be tolerated and that allegations of abuse of constitutional rights would not be investigated." (*Id.* ¶ 35).

Sharif brought the following claims against Defendants: (1) false arrest and false imprisonment under 42 U.S.C. § 1983;[3] (2) malicious prosecution under § 1983; (3) a *Monell* claim[4] based on a municipal practice of failing to investigate crimes adequately and fabricating evidence during investigations; (4) a *Monell* claim based on failure to properly discipline, supervise, and train police officers; and (5) violations of Article 1, Paragraphs 1 and 5, of the New Jersey State Constitution.[5]

Since Sharif has brought civil rights claims for damages arising under 42 U.S.C. § 1983, the Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a). Diversity of citizenship is not alleged, and does not appear to be present. *See* 28 U.S.C. § 1332. Thus, the Court may hear the remaining state law claims, if at all, solely on the basis of supplemental jurisdiction. *See* 28 U.S.C. § 1367.

Now before the Court is Defendants' motion to dismiss the Complaint for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6). (*See* Def. Mot.) For the reasons stated below, I will dismiss the Complaint without prejudice.

## II. ANALYSIS

Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Animal Science Products, Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n. 9 (3d Cir. 2011). For the purposes of a motion to dismiss, the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the

---

[3] I presume that claims 1 through 4 are brought under 42 U.S.C. § 1983. Section 1983 is the vehicle for remedying violations of the United States Constitution with an award of damages. *See Imbler v. Pachtman*, 424 U.S. 409, 417 (1976). As corroboration of that assumption I note that Sharif is also seeking attorneys' fees pursuant to 42 U.S.C. § 1988, implying that the underlying claims are brought under Section 1983.

[4] *See Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658 (1978).

[5] Sharif also included a violation of Article 1, Paragraph 12 of the New Jersey State Constitution in the Complaint. (AC ¶ 47). However, Sharif withdrew that claim. (*See* Pl. Opp. at pp. 12-13).

4

plaintiff. *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014).

Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570; *see also West Run Student Housing Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 169 (3d Cir. 2013). That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

### A. False Arrest and False Imprisonment (Count 1)[6]

To state a claim under Section 1983, Sharif must allege facts sufficient to show that (1) he was deprived of a constitutional right or a federal statutory right, and (2) the conduct at issue occurred under color of law. *Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995). Sharif alleges his arrest constituted a violation of his rights under the Fourth and Fourteenth

---

[6] "False arrest and false imprisonment overlap; the former is a species of the latter." *Wallace v. Kato*, 549 U.S. 384, 388, 127 S. Ct. 1091, 1095 (2007); *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 926 (2017); *see also* D. Dobbs, *The Law of Torts* § 36, at 67 (2000) ("False arrest is a term that describes the setting for false imprisonment when it is committed by an officer or by one who claims the power to make an arrest.").

5

Amendments of the United States Constitution "to be free from unreasonable seizure of his person." (AC ¶ 28).

Sharif's false arrest claim must be analyzed as an unlawful seizure under the Fourth Amendment, and not under the more general due process guarantees of the Fourteenth Amendment. *See Albright v. Oliver*, 510 U.S. 266, 271-73 (1994) ("Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." (internal quotations omitted)); *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 918-20 (2017). It is well established in the Third Circuit that an arrest without probable cause is actionable under Section 1983 as a violation of rights secured by the Fourth Amendment. *See Hill v. Algor*, 85 F.Supp.2d 391, 397 (3d Cir. 2000).

The elements of a false-arrest claim are "(a) that an arrest occurred; and (b) that the arrest was made without probable cause." *Brown v. Makofka*, 644 F. App'x 139, 143 (3d Cir. 2016). "The proper inquiry in a claim for false arrest under § 1983 is 'not whether the person arrested in fact committed the offense, but whether the arresting officers had probable cause to believe the person arrested had committed the offense.'" *Shelley v. Wilson*, 152 F. App'x 126, 129 (3d Cir. 2005) (quoting *Dowling v. City of Philadelphia*, 855 F.2d 136, 141 (3d Cir. 1988)). Probable cause for an arrest exists when "the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Merkle v. Upper Dublin School Dist.*, 211 F.3d 782, 788 (3d Cir.2000) (quoting *Orsatti v. New Jersey State Police*, 71 F.3d 480, 482 (3d Cir.1995)). "[P]robable cause requires only 'a probability or substantial chance of criminal activity, not an actual showing of

such activity.'" *Peterson v. Attorney Gen. Pennsylvania*, 551 F. App'x 626, 629 (3d Cir. 2014) (quoting *U.S. v. Miknevich*, 638 F.3d 178, 185 (3d Cir. 2011)).

Defendants do not dispute that an unreasonable seizure of Sharif's person would constitute a violation of his rights under the Fourth Amendment or that Defendants were acting under color of law. Nor do they dispute that Sharif was indeed arrested. Rather, Defendants contend that Sharif has not adequately pled the absence of probable cause. (Def. Mot. at pp. 5-8).

I agree. Sharif must sufficiently allege that the police lacked probable cause in order to state a claim for false arrest. *Brown*, 644 F. App'x at 143; *Johnson v. Bingnear*, 441 F. App'x 848, 851 (3d Cir. 2011). He has not done so. Instead, Sharif merely asserts in conclusory fashion that "the allegations which caused him to be arrested were false" and that his arrest was "wrongful[]." (AC ¶¶ 19, 27). He does not assert any facts as to *why* the allegations which caused him to be arrested were false or otherwise plausibly wrongful.

Sharif does allege that the officers involved in the undercover drug sales were accused of wrongdoing in an unrelated matter and that this created "serious concerns about the credibility" of those officers. (AC ¶¶ 20-25). As alleged in the Complaint, these credibility concerns were the basis for the dismissal of the charges against him. (*Id.*). However, Sharif does not allege any connection between the unrelated incident of the officers entering a home without a warrant and his own case. Instead, Sharif implies, without stating, that since these police officers were involved in wrongdoing in a separate case, there must be wrongdoing in his own case as well.

The Court cannot make this inference for the Plaintiff. Sharif does not allege that he did not sell cocaine to the undercover police officers. He does not allege that the individual officers fabricated any evidence or otherwise mistook him for another person. He does not allege that the warrant for his arrest was somehow improperly obtained. Simply stating that the officers involved in his arrest were reprimanded for misconduct in an unrelated matter—even where

there misconduct contributed to the dropping of charges—is not a sufficient recitation that probable cause was lacking for his arrest.

Sharif states in his Opposition Brief, for the first time, that the three instances where the police officers allegedly bought cocaine from him did not actually occur and that it was the defendant police officers who "made false allegations against him." (Pl. Opp. at pp. 4, 6). Defendants correctly point out that asserting facts solely in an opposition brief is not a proper substitute for alleging facts in a complaint. *See Dongelewicz v. PNC Bank Nat'l. Ass'n.*, 104 F. App'x 811, 819 n.4 (3d Cir. 2004) (Noting that "'a contention in a brief' 'clearly ... may not' be used to 'substitute for an allegation in a complaint'") (quoting *Williams v. New Castle County*, 970 F.2d 1260, 1266 n.4 (3d Cir. 1992)); *Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." (internal citation omitted)). And even if these facts were alleged in the Complaint, it is unlikely that they would rise to the level of specificity or plausibility required to plead a claim for false arrest, especially when that arrest was made pursuant to a warrant. *See Reedy v. Evanson*, 615 F.3d 197, 213 (3d Cir. 2010) (holding that liability for a 1983 false arrest claim, when the purported unlawful arrest was made pursuant to a warrant, cannot be sustained unless the plaintiff shows "(1) that the police officer knowingly and deliberately or with reckless disregard for the truth made false statements or omissions that create a falsehood in applying for a warrant; and (2) that such statements or omissions are material, or necessary, to the finding of probable cause.").

Sharif also asserts for the first time in his Opposition Brief that "part of the reason" that the charges against him were dismissed "may have been that the defendant police officers may have been untruthful as to the alleged arrests." (*Id.*). To begin with, this is another invalid attempt to remedy the deficiencies of the complaint by means of statements in a brief. More fundamentally, speculation that misrepresentations "may have" occurred does

not satisfy the facial-plausibility standard that allows a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

The Complaint fails to allege a lack of probable cause, and Count I, alleging false arrest, is dismissed.

### B. Malicious Prosecution (Count II)

To state a claim for malicious prosecution, a plaintiff must allege the following elements: "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in [the plaintiff's] favor; (3) the defendants initiated the proceeding without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) [the plaintiff] suffered [a] deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *Geness v. Cox*, 902 F.3d 344, 355 (3d Cir. 2018) (quoting *Zimmerman v. Corbett*, 873 F.3d 414, 418 (3d Cir. 2017)).

As laid out in the false arrest analysis above, Sharif has not adequately pled a lack of probable cause. *See supra* II.A. The analyses of probable cause for these two counts merges, because the arrest was based on a previously-filed criminal charge and previously-issued arrest warrant.[7] These allegations fail to

---

[7] I find that the deficiency of Count II of the Complaint is most directly viewed as failure to plead lack of probable cause. That element, however, is intertwined with the others.

For example, Defendants take issue with the first element, the initiation of criminal proceedings, and the second element, that the criminal proceedings ended in the plaintiff's favor. As to the first element, Sharif has alleged that his arrest was made pursuant to a warrant, which is indeed a way of initiating legal process. *See Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 927 n.6 (2017) ("An arrest warrant, after all, is a way of initiating legal process, in which a magistrate finds probable cause that a person committed a crime."). However, in order to satisfy the initiation element with respect to a police officer who makes an arrest pursuant to a warrant, a plaintiff would need to adequately allege that the judicial official who issued the warrant was misled by that officer. *See Hector v. Watt*, 235 F.3d 154, 164 (3d Cir.2000) (Nygaard, J., concurring) (noting that the warrant "was not the result of a truly independent decision by a magistrate, but rather was contaminated and compromised by the officer's misinformation"); *Ayers v. Police Officer Sean Quinn*, No. 16-4339, 2017 WL 4011003, at *3 (E.D. Pa. Sept. 8, 2017); *see also Townes v. City of New York*, 176 F.3d 138, 147 (2d Cir. 1999) (stating that an exercise of independent judgment breaks chain of

9

satisfy the third element of a malicious prosecution claim. *Geness*, 902 F.3d at 355. This alone is a sufficient basis to dismiss his claim. *Trabal v. Wells Fargo Armored Serv. Corp.*, 269 F.3d 243, 249 (3d Cir. 2001) (noting that "lack of probable cause is a *sine qua non* of malicious prosecution."). In addition, the fourth element of malice also fails because it rests solely on the alleged lack of probable cause. (Pl. Opp. at p. 7); *Robinson v. Jordan*, 804 F. Supp. 2d 203, 206 (D.N.J. 2011) ("The element of malice may be inferred from a lack of probable cause.").

Count II fails to state a claim for malicious prosecution, and will be dismissed.

### C. Monell Claims (Counts III and IV)

Sharif alleges *Monell* liability claims against the City, Hackensack PD, and Aquila for unlawful practices and inadequate training. He asserts that these defendants had a practice of failing to investigate crimes adequately and fabricating evidence. He also asserts that the City had a practice of failing to properly discipline, supervise, and train police officers in a way that would ensure that the officers would conduct constitutionally adequate investigations.

The short answer to these contentions is that, for the reasons stated above, the complaint fails to plead an underlying constitutional violation against the officers directly involved. It follows that the City and Aquila cannot be derivatively liable for such a violation.

To guide any amended pleading, I briefly discuss other defects in the *Monell* allegations. "[F]or municipal liability to attach, any injury must be

---

causation "in the absence of [a claim of] evidence that the police officer misled or pressured the official who could be expected to exercise independent judgment").

As to the second element, Defendants argue that Sharif has failed to allege sufficient facts to demonstrate that he obtained a favorable disposition of the underlying criminal charges because he only alleges an informal dismissal of the charges. (Def. Mot. at pp. 11-13). It is true that not every dismissal of charges signifies a favorable termination. *See Morris v. Verniero*, 453 F.App'x 243, 245-46 (3d Cir. 2011); *Donahue v. Gavin*, 280 F.3d 371, 383 (3d Cir. 2002). I cannot decide that issue based on the face of the complaint, however.

inflicted by 'execution of a government's policy or custom.'" *Santiago v. Warminster Twp.*, 629 F.3d 121, 135 (3d Cir. 2010) (quoting *Monell*, 436 U.S. at 694). A municipal policy is made when a "decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir.1990) (internal quotations omitted); *Butler v. Lamont*, 732 F. App'x 125, 127 (3d Cir. 2018). A municipal custom may be shown where a course of conduct, though not authorized by law, is "so permanent and well-settled as to virtually constitute law." *Andrews*, 895 F.2d at 1480; *Butler*, 732 F. App'x at 127. One such custom is "deliberate indifference" toward the class of persons who might suffer a constitutional injury as a result of the conduct in question. *Simmons v. City of Philadelphia*, 947 F.2d 1042, 1059-60 (3d Cir. 1991). Inadequate police training may serve as the basis for municipal liability under Section 1983, but only where the failure to train "amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). The deliberate indifference standard is a demanding one, "requiring proof that a municipal actor disregarded a known or obvious consequence of his [or her] action." *Connick v. Thompson*, 563 U.S. 51, 131 S.Ct. 1350, 1360, 179 L.Ed.2d 417 (2011) (internal quotation omitted).

Sharif's Complaint consists only of legal boilerplate. It fails to make any factual allegation of an express policy or custom authorizing the officers' alleged improper conduct or demonstrating inadequate training.[8] These are mere assertions of an entitlement to relief, which, without supporting factual allegations, are insufficient under Fed. R. Civ. P. 8(a)(2). *See McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009). Even if an underlying § 1983 claim had been pled against the individual officers, these *Monell* counts would be dismissed for failing to state a claim. *See Wood v. Williams*, 568 F. App'x 100,

---

8    Plaintiff apparently agrees. (*See* Pl. Reply at 9-10).

104-05 (3d Cir. 2014) (affirming dismissal of *Monell* claims where "the complaint made conclusory and general claims of failure to screen, train, or supervise employees to avoid constitutional violations."); *McTernan*, 564 F.3d at 658 (indicating that "[t]o satisfy the pleading standard" for a *Monell* claim a plaintiff "must identify a custom or policy, and specify what exactly that custom or policy was."); *see also Brown v. Makofka*, 644 F. App'x 139, 144 (3d Cir. 2016).

Counts II and IV are therefore dismissed.

### D. New Jersey State Constitution Claims (Count V)

Sharif alleges violations of his rights under the New Jersey State Constitution. Specifically, he alleges violations of Article I, Paragraph 1 and Paragraph 5, which set forth the following:

1. All persons are by nature free and independent, and have certain natural and unalienable rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing, and protecting property, and of pursuing and obtaining safety and happiness.

...

5. No person shall be denied the enjoyment of any civil or military right, nor be discriminated against in the exercise of any civil or military right, nor be segregated in the militia or in the public schools, because of religious principles, race, color, ancestry or national origin.

"The New Jersey Civil Rights Act [("NJCRA"), N.J.S.A. 10:6-2] was modeled after 42 U.S.C. § 1983, and creates a private cause of action for violations of civil rights secured under the New Jersey Constitution[]." *Trafton v. City of Woodbury*, 799 F.Supp.2d 417, 443–44. (D.N.J.2011); *Castillo-Perez v. City of Elizabeth*, No. 11-6958, 2014 WL 1614845, at *9 (D.N.J. Apr. 21, 2014). This District has uniformly interpreted the NJCRA in parallel with Section 1983 and read the two as coextensive. *Id.*; *see also Estate of Lydia Joy Perry ex rel. Kale v. Sloan*, No. 10-4646, 2011 WL 2148813, at *2 (D.N.J. May 31, 2011) (collecting cases). While Sharif does not specifically name the NJCRA, I will

construe his New Jersey State Constitution claims as being brought under that Act. *See Estate of King v. City of Jersey City*, No. 15-6868, 2018 WL 3201793, at *6 (D.N.J. June 29, 2018).

The parties have not suggested any distinction between the claims under the NJCRA and their counterparts under 42 U.S.C. § 1983. Therefore, for the reasons stated in subsections II.A through II.C, *supra*, I will grant the motion to dismiss the New Jersey State Constitution count insofar as it asserts claims for false arrest, malicious prosecution, failure to train, and failure to supervise. In the alternative, given the lack of substance of the federal claims (as currently pled), as well as the early procedural stage of this litigation, I would decline to exercise supplemental jurisdiction over these state claims. *See* 28 U.S.C. § 1367(c).

Count V is therefore dismissed without prejudice.

### III. CONCLUSION

For the reasons stated in this Opinion, Defendants' motion to dismiss the Complaint is granted on Rule 12(b)(6) grounds with respect to all counts. Because this is an initial dismissal, I will order that it be entered without prejudice to the filing, within 30 days, of a proposed amended complaint. However, as discussed above, the claims against the Hackensack Police Department are dismissed with prejudice.

An appropriate Order follows.

Dated: October 29, 2018

HON. KEVIN MCNULTY, U.S.D.J.